Barbara A. PECK et al.

v.

JONATHAN MICHAEL BUILDERS, INC.

No. 2007–160–Appeal.

Supreme Court of Rhode Island.

Jan. 9, 2008.

---

Theodore Orson, Esq., for Plaintiff.

Robert D. Wieck, Esq., Providence, for Avalon Holdings, Defendant.

Present: WILLIAMS, C.J., GOLDBERG, FLAHERTY, SUTTELL, and ROBINSON, JJ.

## OPINION

Justice FLAHERTY, for the Court.

Avalon Holdings, LLC (Avalon), an objecting creditor, appeals from a Superior Court order granting the petition of Barbara A. Peck and Jeffrey Cote, the petitioners, to appoint a permanent receiver to oversee the liquidation and eventual dissolution of the respondent Jonathan Michael Builders, Inc. (JMB), an insolvent corporation.[1] The parties appeared for oral argument on December 11, 2007, pursuant to an order of this Court to show cause why the issues raised in this appeal should not summarily be decided without further briefing or argument. After considering

---

1. Although Avalon states in its brief that it is appealing from the Superior Court's judgment of April 13, 2007, granting petitioners' motion to amend their petition, the notice of appeal indicates that Avalon actually is appealing from the Superior Court's order on October 31, 2006, appointing a permanent receiver. Such an appeal is permissible under G.L. 1956 § 9–24–7:

"Whenever, upon a hearing in the superior court, an injunction shall be granted or continued, or a receiver appointed, * * * an appeal may be taken from such order or judgment to the supreme court in like manner as from a final judgment, and the appeal shall take precedence in the supreme court."

the record, the memoranda submitted by the parties, and the oral arguments advanced by each, we are of the opinion that cause has not been shown and that the case should be decided at this time. For the reasons below, we affirm the order of the Superior Court.

### Facts and Procedural History

In March 2005, Avalon sued JMB for breach of contract and unjust enrichment, alleging that Avalon had paid JMB money for materials and services related to a residential construction project in Jamestown, which JMB had abandoned prior to completion of the work. On March 15, 2006, petitioners Peck and Cote, the only stockholders of JMB, filed a petition for the appointment of a receiver in Kent County Superior Court, alleging that "there is a danger of dissipation and depreciation" of the corporation's assets and that:

"[I]t is urgent and advisable that a Temporary Receiver be appointed immediately to take charge of the affairs, assets, estate, effects and property of said Respondent to preserve the same for the interest of all creditors."

The Superior Court appointed attorney Theodore Orson as a temporary receiver pending the outcome of a hearing to determine whether a permanent receiver would be appointed. Avalon then filed an objection and motion to dismiss the receivership petition, claiming that petitioners (1) failed to satisfy the statutory requirements of G.L. 1956 § 7–1.2–1314 to initiate a receivership proceeding; (2) failed to comply with Rule 66(b) of the Superior Court Rules of Civil Procedure [2] and an Executive Order of the Rhode Island Supreme Court regarding the appointment of receivers; [3] and (3) improperly filed their

2. Under Rule 66(b) of the Superior Court Rules of Civil Procedure:

"A temporary receiver shall not be appointed ex parte except upon a showing in writing by the applicant under oath, accompanied by the certificate of the applicant's attorney, satisfactory to the court, that the application is made in good faith for the protection of the business affected by such appointment; that facts be set forth justifying the appointment of a receiver and the appointment of a temporary receiver is desirable to protect the status quo pending final hearing for the appointment of a receiver. Before acting upon an application for the appointment of a temporary receiver the court may call in for consultation, so far as practicable, all the interested parties or their counsel, or the court may in its discretion set down the matter of the appointment of a temporary receiver at as early a date as is practicable, with such notice as the court may order.

"If an application for the ex parte appointment of a temporary receiver is made to and denied by one justice of the court such application shall not be again made to any other justice unless there is a material change in circumstances. The justice to

whom such application was originally presented shall note the justice's action upon the complaint containing such application."

3. Executive Order 2002–2 reads in relevant part:

"[I]n order to provide competent representation, to ensure that the distribution of court appointments is made in a fair and equitable fashion, to provide a uniform and efficient system for making such appointments, and to protect the public interest, it is hereby ordered that the Supreme, Superior, District, Family, and Workers' Compensation Courts each establish and monitor rotating lists of qualified attorneys available for court appointments in the cases that fall within their respective jurisdictions.

"\* \* \*

"All panels shall be structured to include as large a list of qualified and willing attorneys as is feasible. Such panels may be subdivided by geographical areas relevant to court jurisdictions, including county courts and divisions, if appropriate. Appointments from the respective panels shall be made in accordance with a rotating system. However, in the discretion of the court, an attorney who has been previously

petition in the Superior Court, rather than the United States Bankruptcy Court, in an effort to prevent Avalon from obtaining court-ordered discovery from JMB in their pending litigation.

The petitioners responded with a motion to amend the petition to provide additional grounds to appoint a receiver under §§ 7–1.2–1302(b)(4), 7–1.2–1303(7), 7–1.2–1314(a)(1)(iv), 7–1.2–1314(a)(1)(vi), and principles of equity. According to the amended petition, petitioners, the only shareholders of JMB, voted to dissolve the corporation at a shareholder meeting on March 15, 2006. Additionally, each shareholder signed an "Action by Unanimous Consent of the Stockholders," dated May 14, 2006, which ratified the results of the March 15 meeting and independently resolved to dissolve JMB.[4]

On October 27, 2006, a hearing justice decided that the Superior Court had both statutory and inherent jurisdiction to appoint a permanent receiver to liquidate JMB. Specifically, the hearing justice found that although the statutory scheme did not provide for the voluntary dissolution of an insolvent corporation, the statutory framework provided the Superior Court with the authority to appoint a receiver to supervise the liquidation and eventual dissolution of such a corporation. The hearing justice also found that, assuming *arguendo* that the Superior Court did *not* have statutory jurisdiction to appoint a permanent receiver, it had the inherent jurisdiction to do so. An order appointing a permanent receiver was entered on October 31, 2006, and judgment granting peti-

tioners' motion to amend their petition was entered on April 13, 2007.

JMB timely appealed to this Court, arguing that the hearing justice erred as a matter of law when he found that the Superior Court had both statutory and inherent jurisdiction to appoint a receiver to liquidate an insolvent corporation upon the voluntary petition of all of the corporation's shareholders. The petitioners Peck and Cote contend that the hearing justice was correct in finding jurisdiction on both grounds.

## Standard of Review

"Questions of law and statutory interpretation * * * are reviewed *de novo* by this Court." *Rhode Island Depositors Economic Protection Corp. v. Bowen Court Associates*, 763 A.2d 1005, 1007 (R.I. 2001). In carrying out our duty as the final arbiter on questions of statutory construction, "[i]t is well settled that when the language of a statute is clear and unambiguous, this Court must interpret the statute literally and must give the words of the statute their plain and ordinary meanings." *Accent Store Design, Inc. v. Marathon House, Inc.*, 674 A.2d 1223, 1226 (R.I.1996). However, "[t]his [C]ourt will not construe a statute to reach an absurd result." *Kaya v. Partington*, 681 A.2d 256, 261 (R.I.1996). The Legislature is presumed to know the state of existing relevant law when it enacts a statute. *Defenders of Animals, Inc. v. Department of Environmental Management*, 553 A.2d 541, 543 (R.I.1989).

---

appointed to represent a party may be appointed out of rotation to represent that party in any matter arising out of the same transaction or in other circumstances where savings of time and expense may be achieved. Any other deviation from the rotating system shall be occasioned only when specialized expertise, conflicts of in-

terest, or emergency needs are factors. When deviations do occur, such reasons shall be noted by the judge or clerk in the case file."

4. Thereafter, the case was transferred *sua sponte* from Kent County to Providence County.

## Analysis

■ In our opinion, the Rhode Island Business Corporation Act (BCA),[5] cloaks the Superior Court with jurisdiction to appoint a liquidating receiver of an insolvent corporation, such as JMB. In reaching this conclusion, we first review the statutory scheme of liquidation and appointment of receiverships. Section 7–1.2–1314 unequivocally permits the Superior Court to supervise the liquidation of a corporation in specifically enumerated circumstances.[6] *See also* § 7–1.2–1316 (permitting the appointment of receivers in liquidation proceedings). The statute makes no distinction between solvent and insolvent corporations. Section 7–1.2–1314 provides in pertinent part:

"(a) The superior court has full power to liquidate the assets and business of a corporation:

"(1) In an action by a shareholder when it is established that, whether or not the corporate business has been or could be operated at a profit, dissolution would be beneficial to the shareholders because:

"(i) The directors or those other individuals that may be responsible for management pursuant to § 7–1.2–1701(a) are deadlocked in the management of the corporate affairs and the shareholders are unable to break the deadlock; or

"(ii) The acts of the directors or those in control of the corporation are illegal, oppressive, or fraudulent; or

"(iii) The shareholders are deadlocked in voting power, and have failed, for a period which includes at least two (2) consecutive annual meeting dates, to elect successors to directors whose terms have expired or would have expired upon the election and qualification of their successors; or

"(iv) The corporate assets are being misapplied or are in danger of being wasted or lost; or

"(v) Two (2) or more factions of shareholders are divided and there is such internal dissension that serious harm to the business and affairs of the corporation is threatened; or

"*(vi) The holders of one-half (1/2) or more of all the outstanding shares of the corporation have voted to dissolve the corporation * * *.*" (Emphasis added.)

Although the hearing justice emphasized, and we fully recognize, that liquidation and dissolution are distinct concepts, we note that they inextricably are linked. Under § 7–1.2–1320, an insolvent corporation is required to seek court supervision to dissolve after liquidation of its assets is complete:

"In proceedings to liquidate the assets and business of a corporation, when the costs and expenses of the proceedings and all debts, obligations, and liabilities of the corporation have been paid and discharged and all of its remaining property and assets distributed to its shareholders, or in case its property and assets are not sufficient to satisfy and discharge the costs, expenses, debts, and obligations, all the property and assets

---

5.  General Laws 1956 chapter 1.2 of title 7.

6.  Additionally, § 7–1.2–1302 allows for the voluntary dissolution of a corporation by consent of the shareholders. Under the statute, once the shareholders of a corporation adopt a resolution to dissolve, the shareholders may petition for court-supervised liquidation:

"The corporation, at any time during the liquidation of its business and affairs, may apply to a court of competent jurisdiction within the state and county in which the registered office or principal place of business of the corporation is situated, to have the liquidation continued under the supervision of the court as provided in this chapter." Section 7–1.2–1302(b)(3).

have been applied as far as they will go to their payment, *the court shall enter a decree dissolving the corporation,* at which time the existence of the corporation ceases." (Emphasis added.)

The petitioners here, the only shareholders of JMB, voted to dissolve the corporation in accordance with § 7–1.2–1302, and then petitioned the Superior Court to appoint a permanent receiver. We hold that the Superior Court may supervise the liquidation of an insolvent corporation under § 7–1.2–1314(a)(1)(vi) by appointing a receiver after the corporation has passed a resolution to dissolve under § 7–1.2–1302.[7]

We wholly agree with the hearing justice's conclusion that an insolvent corporation cannot dissolve voluntarily and that dissolution and liquidation are distinct. *See* 16 William Meade Fletcher, *Cyclopedia of the Law of Private Corporations* § 7667.60 (2001); *see also* §§ 7–1.2–1301 to 7–1.2–1303, 7–1.2–1308 to 7–1.2–1309, and 7–1.2–1316. But, after reviewing the relevant statutes, we are aware of no provision of the BCA that prohibits an insolvent corporation from seeking court supervision for liquidation, as opposed to dissolution. Finally, and as noted by the hearing justice, we are convinced that our holding not only comports with the relevant statutes, but also ensures that insolvent corporations receive court-supervised liquidation to avoid a "race-to-the-court-house" by its creditors.

Although insolvency is not a stated ground for shareholders (unlike creditors)[8] to seek liquidation, § 7–1.2–1314(a)(1)(vi) nevertheless allows an insol-

vent corporation to seek liquidation if a majority of shareholders vote to dissolve the corporation.[9] Because the shareholders of JMB unanimously voted to dissolve the corporation, the hearing justice properly found that the Superior Court had jurisdiction to appoint a liquidating receiver under § 7–1.2–1314(a)(1)(vi).

### Conclusion

We affirm the order of the Superior Court, and return the papers in this case to it.

---

7. Because of our holding that the Superior Court has the statutory authority to appoint a receiver, we need not address the hearing justice's alternate rationale—*viz.,* that a justice of the Superior Court has "inherent" authority to appoint a receiver in these circumstances.

8. *See* § 7–1.2–1314(a)(2)(i)(A).

9. In its brief to this Court, respondent misquoted § 7–1.2–1314(a)(1)(vi), which requires that at least, not exactly, half of the shareholders vote to dissolve the corporation.